UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIMOTHY VITAL MALINGA,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

CASE NO. 2:26-cv-03524-GJL

ORDER GRANTING IN PART AMENDED PETITON FOR WRIT OF HABEAS CORPUS

Petitioner Timothy Vital Malinga is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 12. On October 3, 2026, Petitioner, through counsel, filed an Amended habeas corpus Petition under 28 U.S.C. § 2241, seeking immediate release. *Id.* Respondents include Bruce Scott (Warden of the NWIPC) and Markwayne Mullin (U.S. Department of Homeland Security ("DHS") Secretary).[1] The Amended Petition is fully briefed. Dkts. 12, 17, 20.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS IN PART** the Amended Petition (Dkt. 12) and **ORDERS** that Petitioner be **provided a remedial bond hearing** according to the instructions below.

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 7.

## I. BACKGROUND

Petitioner is a native and citizen of Malawi, who lawfully entered the United States on May 6, 2024, pursuant to a B-1/B-2 visitors visa and remained beyond expiration of that visa. Dkt. 12 at 3. It is undisputed that Petitioner's current detention is government by the discretionary detention scheme in 8 U.S.C. § 1226(a). Dkt. 17 at 2. Consistent with the statutory requirements of that scheme, Petitioner requested a bond redetermination hearing before an Immigration Judge ("IJ"). Dkt. 13 at 1.

On August 26, 2026, Petitioner received a bond hearing before IJ John Odell. *Id.* at 2, 5–6. In advance of the hearing, Petitioner submitted evidence in support of his request for release. *Id.* at 1–2; Dkt. 14. Among other things, Petitioner's submissions demonstrated his stable residence, his community ties, employment history, letters of support from his current and former employers, tax returns, and letter from a prospective United States citizen sponsor offering to assist Petitioner and ensure his compliance with any requirements of release and immigration court proceedings. *Id.* The government's evidentiary submissions included a DHS I-213 Form and local law enforcement records concerning Petitioner's recent criminal arrest for driving under the influence. Dkt. 24 at 59–69.

IJ Odell denied bond and issued a written bond decision on a checkbox form marking the following:

[X] ORDERED that the request for a change in custody status be denied. No bond.

[X] Danger to Community.

* * *

[X] OTHER: Conditional release is: denied.

[X] OTHER: Ability to pay considered.

Dkt. 13 at 5. The checkbox order does not include *any* other reason, explanation, or discussion of the bond denial decision or the evidence upon which it rested. *Id.* No neutral contemporaneous record of the bond proceedings was created. *Id.* at 3; Dkt. 23. There is no further written record of the bond denial decision from the perspective of the IJ, *id.*, and no other evidence of the IJ's decision has been made available for the Court's review.

## II. PROCEDURAL BACKGROUND

Petitioner filed his Amended Petition and supporting materials on October 3, 2026. Dkt. 12; Dkts. 13, 14. Respondents filed a Return and supporting materials on October 19, 2026. Dkt. 17; Dkts. 18, 18-1–18-6; Dkt. 19. Petitioner filed a timely Traverse. Dkt. 20.

Thereafter, the Court directed Respondents to submit supplemental filings, including (1) the complete administrative record submitted for IJ's review at Petitioner's bond proceedings, (2) any neutral contemporaneous record of Petitioner's bond proceedings, including any audio recording or transcript of the bond hearing, and (3) any written bond memorandum issued by the IJ concerning Petitioner's bond proceedings. Dkt. 21.

On November 9, 2026, Respondents filed a copy of the administrative record, Dkt. 24, and a Response and Declaration stating that neither a neutral contemporaneous record of Petitioner's bond proceeding nor a written memorandum from the IJ is available. Dkts. 22, 23.

Thus, this matter is now fully briefed and ready for consideration by the Court.

## III. HABEAS STANDARD

Federal courts have the authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from

illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

In his Amended Petition, Petitioner argues that the IJ's bond determination was arbitrary and an abuse of discretion, that exhaustion of administrative remedies should not be required, and that immediate release is the only appropriate remedy. Dkt. 12. In their Return, Respondents argue that Petitioner should be required to exhaust administrative remedies through the Board of Immigration Appeals ("BIA") and, in any case, they maintain that Petitioner's continued detention pursuant to the IJ's discretionary bond determination is lawful. Dkt. 17.

The Court agrees with Petitioner that exhaustion is properly waived and that the IJ's bond determination constituted an abuse of discretion.[2] With respect to remedy, however, the Court finds that Petitioner is entitled to a conditional order of release requiring that he be provided a prompt remedial bond hearing.

### A. Prudential Exhaustion

First, exhaustion is not required here. As recently noted by another court in this District, waiver of that requirement is appropriate given the frequently delayed remedies available through the BIA and the comparatively swift relief available via habeas corpus proceedings:

> If Petitioner is correct that [his] detention is unlawful and h[is] immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. A petition for writ of habeas

[2] Notwithstanding the jurisdictional limitations contained in 8 U.S.C. § 1226(e), the Court also finds it has jurisdiction over Petitioner's claims. *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022); *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) ("[A] district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional.") (collecting cases).

> corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore, "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

*Roberts v. Scott*, No. 2:26-CV-01333-TL, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026) (last alteration in original).

Moreover, Petitioner identifies individualized harms caused by his continued detention pending BIA appeal, such as prolonging his separation from his partner and established community and preventing his return to his stable residence and employment. Dkt. 20 at 8. Thus, the Court concludes that the circumstances presented here warrant waiver of the exhaustion requirement.

**B. Abuse of Discretion**

Next, the Court finds that Petitioner has satisfied his burden of demonstrating by a preponderance of the evidence that reviewable legal or constitutional errors pervaded his immigration bond proceedings and warrant the grant of habeas relief. The record before the Court contains no evidence of the IJ's reasoning for denying bond. No neutral contemporaneous record of the proceeding was created, and there is no evidence of any oral decision rendered by the IJ. No subsequent written memorandum was prepared by the IJ, and the contemporaneous written bond decision was issued on a checkbox form with no explanation of the legal or factual basis for the decision. Dkt. 13 at 5–6.

Respondents are correct in observing that the absence of an audio recording of Petitioner's bond hearing does not equate to the absence of any oral ruling at that hearing. Dkt. 17 at 8. Nevertheless, Respondents submit no evidence of an oral ruling by the IJ, nor do they

allege that a reasoned oral decision was issued in Petitioner's case. As a result, Petitioner, Respondents, and this Court can only speculate as to what combination of facts and law formed the basis of the IJ's decision. A decision that, for Petitioner, deprived him of a fundamental liberty interest for which he is guaranteed constitutional due process. On this record, the Court cannot find that Petitioner was provided the process due to him.

Based on the administrative record presented for the IJ's review, it is conceivable that the IJ may have relied on Petitioner's recent criminal arrest in reaching his dangerousness finding. Dkt. 24 at 64–69. Even if this speculation is well placed, however, the mere existence of a recent criminal arrest does not automatically sustain rational dangerousness finding. *See, e.g.*, *Zhamagortsyan, v. Warden, Adelanto ICE Processing Ctr*., No. 5:26-CV-04093-DTB, 2026 WL 2876062, at *8 (C.D. Cal. Sept. 24, 2026) (concluding that the IJ abused their discretion by denying bond based on generalized dangerousness concerns associated with DUI offenses rather than an individualized assessment of the circumstances surrounding the noncitizen's DUI arrest). Such a categorical bond determination would bear little resemblance to the individualized custody determination that due process demands. Indeed, even in instances involving criminal convictions, an IJ may abuse their discretion if they deny bond without meaningfully considering the "circumstances surrounding the offense, its recency, or its severity, as required by BIA and Ninth Circuit precedent." *Gallego Soto v. Hernandez*., No. 2:26-CV-02557-LK, 2026 WL 3181171, at *5 (W.D. Wash. Oct. 23, 2026).

Here, there is no evidence the IJ considered the particular circumstances of Petitioner's arrest when determining that Petitioner posed a risk of danger to the community and that no conditions or combination of conditions could abate that risk. In the absence of any evidence that the IJ denied bond in a reasoned decision following a meaningful application of law to the

particular facts of Petitioner's case, the Court cannot find that Petitioner received the individualized custody determination due to him.

Accordingly, the Court finds that the IJ abused his discretion in denying bond without a reasoned explanation and that Petitioner's continued detention pursuant to that unreasoned decision violates due process. *See Soto Gimenez v. Hernandez,* No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) ("Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not met, a resulting bond denial decision violates due process.").

**C. Remedy**

The Court next considers the appropriate remedy. In this area, habeas courts have "a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

Given the circumstances presented here, the Court concludes Respondents should be granted the opportunity to cure the legal errors in Petitioner's bond proceedings through a remedial bond hearing. At that remedial bond hearing, Respondents must provide clear and

convincing evidence demonstrating that, if released, Petitioner would pose a danger to the community and that no reasonable conditions of supervision would mitigate that risk. *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026) (noting that clear and convincing evidence standard was appropriate when fashioning a remedy, even if such a standard were not required "as a general matter"); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *4 (W.D. Wash. Mar. 3, 2026) (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation).

Further, to ensure that any resulting bond denial decision is sustained by reasoned judicial decision-making, the Government shall also create a neutral, contemporaneous record of the remedial bond proceedings. *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (addressing utility of creating neutral contemporaneous records of immigration bond proceedings to safeguard against erroneous deprivations of liberty).

## V. CONCLUSION

In light of the foregoing, the Court **ORDERS** as follows:

(1) The Amended Petition (Dkt. 12) is **GRANTED IN PART**;

(2) Respondents **SHALL provide** Petitioner Timothy Vital Malinga with an individualized bond hearing, on adequate notice to Petitioner and his appropriate counsel, before an Immigration Judge ["IJ"] **within fourteen days of this Order** unless the hearing is continued at the Petitioner's request. The Government **SHALL** bear burden of proof by clear and convincing evidence that Petitioner poses a danger to the community. The Government **SHALL** create a neutral contemporaneous record of the proceeding;

(3) If a bond hearing is not provided within fourteen days of the date of this Order, or within a period of continuance requested by Petitioner, Respondents **SHALL release** Petitioner subject to reasonable conditions of supervised release **no later than the fifteenth day after the date of this Order or the day following a period of continuance requested by Petitioner**;

(4) Respondents **SHALL file** a declaration with the Court confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's request for a continuance or his release by **November 30, 2026;**

(5) If the bond hearing is continued at Petitioner's request, Respondents **SHALL file** a supplemental declaration confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's release **within two days of the date of the continuance**; and

(6) Together with the declaration confirming that Petitioner received a bond hearing, Respondents **SHALL** also confirm that a neutral, contemporaneous record of the hearing was created.

Dated this 13th day of November, 2026.

Grady J. Leupold
United States Magistrate Judge